FILED

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
(Alexandria Division)

2008 SEP -3 P 1:21

CLERK US DISTRICT COURT
ALEXANDRIA, VIRGINIA

| | |
|---|---|
| COMSTOCK POTOMAC YARD, L.C.<br>11465 Sunset Hills Road, 5th Floor<br>Reston, Virginia 20190<br><br>Plaintiff,<br><br>v.<br><br>BALFOUR BEATTY CONSTRUCTION, LLC<br>3100 McKinnon Street, Tenth Floor<br>Dallas, Texas 75201<br><br>   SERVE:  Corporation Service Company<br>              11 South 12th Street<br>              P.O. Box 1463<br>              Richmond, Virginia 23219<br><br>Defendant. | Civil Action No. 1:08cv894<br>LO/TCB |

## COMPLAINT

COMES NOW, Plaintiff Comstock Potomac Yard, L.C. ("Comstock"), by and through its counsel, Quagliano & Seeger P.C., and for its complaint against Defendant Balfour Beatty Construction, LLC, successor in interest to Centex Construction Company, LLC ("Balfour"), alleges upon information and belief as follows:

### PARTIES

1. Comstock is a Virginia limited liability company with its principal place of business located at 11465 Sunset Hills Road, 5th Floor, Reston, Virginia 20190.

2. At all times relevant hereto, Comstock, *inter alia*, was and is in the business of real estate development and Comstock was and is properly licensed to do business in the Commonwealth of Virginia.

1

3. Balfour is a Delaware corporation with its principal place of business at 3100 McKinnon Street, Tenth Floor, Dallas, Texas 75201. At all time relevant hereto, Balfour was engaged in general construction contracting and was properly licensed to do business in the Commonwealth of Virginia.

## JURISDICTION AND VENUE

4. Jurisdiction is vested in this Court pursuant to U.S.C.A., Title 28 Judiciary and Judicial Procedure §1332 as the amount in controversy exceeds $75,000 and is between corporations of different states.

5. Venue is proper pursuant to U.S.C.A., Title 28 Judiciary and Judicial Procedure §1391, as the Eastern District of Virginia is the division in which the events giving rise to this cause of action occurred.

## BACKGROUND

### I. The Contract Between Comstock and Balfour.

6. Comstock is the developer of a parcel of real property located at 3600 and 3650 South Glebe Road, Arlington, Virginia known as The Eclipse on Center Park Condominium (the "Project"). The Project consists of two high rise towers, the East and the West Towers, and below ground parking. The Project contains approximately 417,000 square feet of residential space, 80,000 square feet of commercial retail space, with 465 residential units and 5 commercial retail units.

7. On or about November 12, 2004, Comstock entered into a contract with Balfour whereby Balfour agreed to serve as the general construction contractor for the Project (the

"Contract"). The original Contract Sum was $92,847,666. A copy of the Contract is attached hereto as Exhibit 1.[1]

8. Balfour agreed in the Contract to substantially complete the Project and discrete portions of the Project on or before designated milestones dates.

9. The Contract expressly defines "substantial completion" as when the Project Architect certifies that: (i) construction is complete in accordance with the Contract Documents; (ii) all remaining punchlist items can be reasonably and ordinarily expected to be completed with 30 days; (iii) a Temporary Certificate of Occupancy is issued by the County; and, (iv) 90% of individual condominiums units and all associated common areas within each milestone are complete for turnover. (Ex. 1, Contract, § 8.1.3.)

10. The Contract provides, and Balfour recognized, that timely substantial completion of the Project was of the essence. (Ex. 1, Contract, § 8.1.4.)

11. The parties also agreed that Balfour would pay liquidated damages in the event it failed to meet the substantial completion milestones because the actual damages to Comstock for late delivery of the Project are not readily ascertainable. (Ex. 1, Contract, § 8.1.4.)

12. Balfour experienced certain delays early in its performance of the Contract. On May 25, 2006, the parties executed OCO-0015 ("Change Order No.15") which, *inter alia*, extended the Project time and substantial completion milestones and increased the Contract sum in consideration for the extended schedule. A copy of the Change Order No. 15 is attached as Exhibit 2.

---

[1] The Contract is between Comstock and Centex Construction Company, LLC ("Centex") but during the course of the Project, Balfour purchased Centex and assumed all of the rights and obligations under the Contract.

13. Specifically, Change Order No. 15 extended the date for overall Project substantial completion by 60 days to February 15, 2007, and re-established the interim substantial completion milestones as follows:

| West Tower | Milestone for Substantial Completion | | East Tower | Milestone for Substantial Completion |
|---|---|---|---|---|
| Level 2 | 10/9/2006 | | Level 1 | 11/15/2006 |
| Level 3 | 10/9/2006 | | Level 2 | 11/15/2006 |
| Level 4 | 10/25/2006 | | Level 3 | 11/22/2006 |
| Level 5 | 11/6/2006 | | Level 4 | 11/30/2006 |
| Level 6 | 11/17/2006 | | Level 5 | 12/11/2006 |
| Level 7 | 11/30/2006 | | Level 6 | 12/20/2006 |
| Level 8 | 12/5/2006 | | Level 7 | 12/26/2006 |
| Level 9 | 12/8/2006 | | Level 8 | 1/8/2007 |
| Level 10 | 12/14/2006 | | Level 9 | 1/18/2007 |
| Level 11 | 12/20/2006 | | Level 10 | 1/29/2008 |
| | | | Level 11 | 2/8/2007 |

(Ex. 2, Change Order No. 15.)

14. The agreed upon compensation and adjustment of substantial completion dates in Change Order No. 15 were agreed to be the full and final consideration for any and all delays to the Project through April 30, 2006. (Ex. 2, Change Order No. 15.)

15. In Change Order No. 15, the parties also agreed that Balfour would pay the following liquidated damages if the substantial completion milestones where not achieved:

| Milestones | Date When Liquidated Damages Apply | Liquidated Damages Per Day |
|---|---|---|
| West Tower | | |
| Level 2 and 3 | 10/9/2006 | $1,500.00 |
| Level 4, 5 and 6 | 11/17/2006 | $3,000.00 |
| Level 7, 8 and 9 | 12/8/2006 | $4,500.00 |
| Level 10 and 11 | 12/20/2006 | $6,000.00 |
| East Tower | | |
| Level 1, 2 and 3 | 11/22/2006 | $1,500.00 |
| Level 4, 5 and 6 | 12/20/2006 | $3,000.00 |
| Level 7, 8 and 9 | 1/18/2007 | $4,500.00 |
| Level 10 and 11 | 2/8/2007 | $6,000.00 |

(Ex. 2, Change Order No. 15.)

4

## II.     Balfour Breaches the Contract.

16.     On May 30, 2006, only six days after Balfour executed Change Order No. 15, Balfour delivered to Comstock Schedule Update PY 19 showing that estimated completion for all milestones was later than agreed to in Change Order No. 15. A true and correct copy of Schedule Update PY 19 is attached hereto as Exhibit 3.

17.     Balfour claimed that the West Tower delays in May 2006 were due to completion of rough-ins, framing and building skin activities. (See Ex. 3, Schedule Update PY 19.)

18.     Balfour asserted that East Tower delays in May 2006 were due to work activities on the East Tower and unrelated to the West Tower work. (See Ex. 3, Schedule Update PY 19.)

19.     Schedule Update PY 19 identified Building Permit as activity CM0030 which had an anticipated early start date of June 1, 2006, and would not impact the Project's critical path for 193 days. (See Ex. 3, Schedule Update PY 19.)

20.     Balfour's performance and progress continued to deteriorate and Comstock demanded that Balfour adhere to the Change Order No. 15 milestones.

21.     On or about August 12, 2006, Balfour delivered to Comstock Schedule Update PY 21 showing significant further delays to all milestone dates. For the first time, Balfour asserted that these delays were due to the alleged late receipt of the Building Permit.

22.     Balfour continued to neglect its work and, despite demand by Comstock, refused to dedicate sufficient manpower and resources to the Project.

23.     Balfour has failed and/or refused to properly and timely perform its work under the Contract.

24. Indeed, the Project Architect has not and will not certify that Balfour has achieved substantial completion on any level of the Project, as required by the Contract to stop the running of liquidated damages.

25. As a result of Balfour's failure to achieve substantial completion on any level of the Project, Comstock is entitled to liquidated damages in an amount in excess of Eight Million Dollars ($8,000,000) and such damages continue to accrue until substantial completion is achieved.

26. As a further result of Balfour's failure and/or refusal to properly and timely perform the Contract, Comstock has been forced to directly contract with other contractors and to utilize its own employees to perform certain portions of the work that Balfour is responsible for under the Contract.

27. Specifically, Comstock has incurred One Million Six Hundred Seventy Thousand Seven Hundred Forty and 43/100 ($1,670,740.43) in costs to employ other contactors and One Million One Hundred Twenty-Eight Thousand Eight Hundred Sixty-Three and 49/100 ($1,128,863.49) to utilize its own employees to perform certain portions of the work that Balfour is responsible for under the Contract.

28. Further, Comstock has notified Balfour of substantial defective work at the Project that has not been remedied in accordance with the Contract.

29. Despite proper request by Comstock, and Balfour's contractual obligation to fix the defective work, Balfour has failed and/or refused to remedy the defective work.

30. Comstock estimates that correction of the defective work at the Project will cost in excess of One Million Six Hundred Thousand Dollars ($1,600,000).

### III. The Lien Free Agreement Between Comstock and Balfour.

31. On January 30, 2008, the parties entered into an agreement to: (i) resolve certain payment related claims by Balfour and its subcontractors; (ii) release subcontractor mechanic's liens filed against the Project; and (iii) ensure the mechanic's lien-free completion of the Project (the "Agreement"). A copy of the Agreement is attached as Exhibit 4.

32. Specifically, Comstock agreed to pay $1,172,500 for a number of disputed change orders and Balfour expressly provided that it "will not at any time file or record a lien against the Project." (Ex. 4, Agreement.)

### IV. Balfour Breaches the Agreement.

33. On June 29, 2008, in direct contravention of the Agreement and only twelve days after an unsuccessful mediation session, Balfour knowingly, intentionally and maliciously filed two mechanic's liens against the Project for $221,566 and $330,610 (the "Liens").

34. Despite demand, Balfour refuses to bond off or otherwise release the Liens.

35. Balfour refuses to articulate the basis for the amounts asserted in the Liens.

36. Comstock has been damaged by Balfour's knowing, intentional and malicious breach of the Agreement and filing of the Liens against the Project. Comstock's damages include, but are not limited to, its additional costs from: (i) amounts paid to Balfour under the Agreement of $1,172,500; (ii) inability to sell and/or delay in sales of condominium units; (iii) escrow costs required to sell the condominium units; (iv) increased loan interest rates and/or inability to refinance at more favorable loan interest rates; and, (v) increased costs associated with its turnover of the Project to the unit owners.

## COUNT I – Breach of Contract

37. Comstock incorporates Paragraphs 1 through 36 by reference as if set forth fully herein.

38. Comstock entered into valid contracts with Balfour.

39. Balfour materially breached the parties' contracts by failing, *inter alia*, to: (i) perform its work in accordance with the Contract; (ii) achieve substantial completion by the agreed milestones; (iii) complete its work at the Project; (iv) fix defective work at the Project; and, (v) by filing mechanic's liens against the Project despite its express waiver of the right to do so in the Agreement.

40. As a direct result of Balfour's breaches, Comstock has been and continues to be damaged in an amount not less than Thirteen Million Eight Hundred Thousand Dollars ($13,800,000), the exact amount to be proven at trial.

41. Comstock has satisfied all conditions precedent to bringing this action.

WHEREFORE, Plaintiff Comstock Potomac Yard, L.C. demands judgment in its favor and against Defendant Balfour Beatty Construction, LLC in an amount not less than Thirteen Million Eight Hundred Thousand Dollars ($13,800,000), the exact amount to be proven at trial plus interest, costs and such other and further relief as this Court deems appropriate.

## COUNT II – Slander of Title

42. Comstock incorporates Paragraphs 1 through 36 by reference as if set forth fully herein.

43. Comstock has a recognized property interest in the Project.

44. Balfour knowingly, intentionally and maliciously filed the Liens and this published a falsehood about the Project which it knew or should have know would result in harm to Comstock's property interest in the Project.

45. As a result of Balfour's improper actions, Comstock has incurred costs stemming from, among other things, the following: (i) inability to sell and/or delay in sales of units; (ii) escrowing funds necessary to sell units; (iii) increased construction loan interest rates and/or inability to refinance at more favorable construction loan interest rates; and, (iv) increased costs associated with its turnover of the Project to the unit owners.

WHEREFORE, Plaintiff Comstock Potomac Yard, L.C. demands that the liens be declared invalid and Ordered stricken, and judgment entered in its favor and against Defendant Balfour Beatty Construction, LLC, the exact amount of which will be proven at trial.

## COUNT III – Abuse of Process

46. Comstock incorporates Paragraphs 1 through 36 by reference as if set forth fully herein.

47. In the Agreement, Balfour agreed not to file mechanic's liens against the Project.

48. Despite this agreement, Balfour knowingly, intentionally and maliciously filed the Liens against the Project and refuses to remove the Liens.

49. Balfour's filing of the Liens and refusal to release the Liens is an improper use of the judicial process.

50. Balfour filed the Liens with the ulterior purpose of, *inter alia*, clouding title to the Project to disrupt Comstock's sale of the units and/or force a settlement.

51. As a result of Balfour's improper actions, Comstock has incurred costs stemming from, among other things, the following: (i) inability to sell and/or delay in sales of units; (ii)

escrowing funds necessary to sell units; (iii) increased construction loan interest rates and/or inability to refinance at more favorable construction loan interest rates; and, (iv) increased costs associated with its turnover of the Project to the unit owners.

WHEREFORE, Plaintiff Comstock Potomac Yard, L.C. demands that the liens be declared invalid and Ordered stricken, and judgment entered in its favor and against Defendant Balfour Beatty Construction, LLC, the exact amount of which will be proven at trial.

Dated: September 3, 2008                                     Respectfully submitted,

**COMSTOCK POTOMAC YARD, L.C.**
By Counsel

_____
Stephen M. Seeger, VSB # 40548
Attorney for Plaintiff Comstock
Potomac Yard, L.C.
Quagliano & Seeger, P.C.
2620 P Street, NW
Washington, DC 20007
Telephone:   (202) 822-8838
Facsimile:    (202) 822-6982
E-mail: sseeger@quagseeg.com